In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-8031

JACK P. KATZ, individually and
on behalf of a class,

*Plaintiff-Respondent*,

*v.*

ERNEST A. GERARDI, JR., *et al.*,

*Defendants-Petitioners*.

Petition for Leave to Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 4035—**John W. Darrah**, *Judge*.

SUBMITTED DECEMBER 8, 2008—DECIDED JANUARY 5, 2009

Before EASTERBROOK, *Chief Judge*, and KANNE and SYKES,
*Circuit Judges*.

EASTERBROOK, *Chief Judge*. Jack Katz proposes to repre-
sent a class of persons who contributed real property (or
interests in real property) to the Archstone real estate
investment trust, in exchange for interests called "A-1
Units." In 2007 Archstone merged into Tishman-Lehman
Partnership. Holders of A-1 Units were offered a choice of
cash or Series O Preferred Units in the entity formed by the

merger. Katz contends that the merger violated the terms of the A-1 Units, because neither cash nor the Series O Preferred Units offered investors the same tax benefits as A-1 Units. After a majority of investors approved the merger, however, Katz took the cash and filed this suit in a state court against Archstone, Lehman Brothers, Tishman Speyer Development Corp., and their managers.

Defendants removed this suit to federal court under the Class Action Fairness Act of 2005. It comes within federal jurisdiction not only because the complaint rests on a federal statute but also because Katz has citizenship different from some of the defendants, the proposed class contains more than 100 members, and the stakes exceed $5 million. 28 U.S.C. §1332(d). The district court remanded it to state court after concluding that removal is forbidden by §22(a) of the Securities Act of 1933, 15 U.S.C. §77v(a). See 2008 U.S. Dist. LEXIS 76322 (N.D. Ill. Sept. 23, 2008). One might suppose that a statute enacted in 2005 supersedes a statute enacted in 1933, but the district court held that §22(a) controls because it is "more specific" than the 2005 Act—for §22(a) deals only with securities litigation, while the 2005 Act covers class actions in many substantive fields. Defendants have applied under 28 U.S.C. §1453(c)(1) for permission to appeal. See also *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008). We grant that application and proceed immediately to decision, because the papers filed at the motion stage address the merits too.

Only purchasers of securities may pursue actions under the 1933 Act, see *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), yet Katz (and other members of his class) sold their securities for cash. (The Securities Exchange Act of 1934

permits suits by sellers as well as buyers, but it lacks a provision equivalent to §22(a).) Katz depicts himself as a buyer by characterizing the supposed failure to honor the terms of the A-1 Units as if he had sold those securities and "bought" what Katz calls "new A-1 Units," which he then sold for cash. (A "purchase" of "new A-1 Units" would have been involuntary, but an involuntary purchase is still a purchase. See *SEC v. National Securities, Inc.*, 393 U.S. 453, 467 (1969).)

What Katz calls the "fundamental change doctrine" that turns a sale into a purchase is word play designed to overcome the actual text of the securities laws, and this circuit follows the statutes rather than trying to evade them with legal fictions. See *SEC v. Jakubowski*, 150 F.3d 675, 680 (7th Cir. 1998); *Isquith v. Caremark International, Inc.*, 136 F.3d 531, 535–37 (7th Cir. 1998). Katz sold his units for cash; he did not buy any new security. The "new A-1 Units" are figments of a lawyer's imagination. Using legally fictitious (and factually nonexistent) "new A-1 Units" to nullify a legislative decision that only buyers have rights under the 1933 Act would be wholly unjustified.

Substantive objections to the terms of corporate mergers arise under state law (both contract law and corporate law) rather than federal securities law. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462 (1977). And although any material falsehoods or omissions in the registration statement or prospectus for the Series O Preferred Units could give rise to a claim under federal law, that claim would belong to the SEC, or the buyers of the units, rather than someone such as Katz who did not purchase them. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).

The district court acknowledged some of these problems but thought them irrelevant to the propriety of removal. It is enough, in the district court's view, that the complaint filed in state court invokes the Securities Act of 1933. That alone forecloses removal; if Katz lacks a securities claim, he will lose on the merits in state court, the district judge concluded.

It is hard to distinguish between a claim artfully designed to defeat federal jurisdiction and one that is properly pleaded but unsuccessful on the merits, but it cannot be right to say that a pleader's choice of language always defeats removal. If it did, then Katz could have pleaded a breach of contract, or a violation of duties under corporate law, and added: "this is a workers' compensation suit that cannot be removed as a result of 28 U.S.C. §1445(c)." A pleader cannot block removal by specifying inapplicable legal theories—such as, for example, an assertion that a pension claim arises under state contract or trust law rather than ERISA. See *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir. 1992). A complaint pleads grievances rather than law; a federal court must decide for itself the claim's legal classification. This is true whether the pleader tries to get into federal court by insisting that a state-law claim "really" arises under federal law, or to stay out by declaring that a claim arising under federal law "really" depends on state law alone.

Katz's citation to the 1933 Act is not quite as bald a maneuver as a contention that his grievance is a workers' compensation claim, or the assertion in *Bartholet* that an effort to obtain benefits from a pension or welfare trust was nothing but a state-law contract claim. The merger led to

the registration and issuance of Series O Preferred Units, so federal securities law has some role to play—and we know from decisions such as *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006), that it is possible for a private party to suffer an injury covered by the securities laws even though there is no private right of action to vindicate the investor's entitlements. So we think it best to assume that Katz's complaint is not *just* artful pleading, and to ask whether §22(a) insulates all claims under the 1933 Act from removal under the 2005 Act.

Section 22(a) provides in part: "Except as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." Section 16(c), 15 U.S.C. §77p(c), which was added by the Securities Litigation Uniform Standards Act of 1998, permits the removal of many securities class actions; *Dabit* describes the scope of the 1998 Act. In the district court Katz argued that his suit is not a "covered class action" within the scope of the 1998 Act and therefore may not be removed. Defendants replied that the 2005 Act applies to "all" civil actions, with a few defined exceptions, and that as Katz's suit is not among the exceptions it must be removable.

Section 22(a) and the 2005 Act are incompatible; one or the other must yield. Usually the older law yields to the newer. *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008), holds that things are otherwise for §22(a), however, because *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976), says that an older law maintains its

vitality when it is more specific than a newer one. Section 22(a) covers only securities suits and thus is more specific than the 2005 Act, which applies to all civil actions, the ninth circuit believed. The district court in this suit agreed.

The canon favoring preservation of specific statutes arguably affected by newer, but more general, statutes works when one statute is a subset of the other. For example, if the 2005 Act dealt with all civil suits, then a law applicable only to civil securities actions would be more specific. But §22(a) of the 1933 Act is not a subset of the 2005 Act. Section 22(a) covers only securities actions, but it includes all securities actions—single-investor suits as well as class actions, small class actions as well as large multi-state ones. The 2005 Act, by contrast, covers only large, multi-state class actions. Is the 1933 Act more specific because it deals only with securities law, or is the 2005 Act more specific because it deals only with nationwide class actions? There is no answer to such a question, which means that the canon favoring the specific law over the general one won't solve our problem. Cf. *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) (holding, for this reason among others, that the specificity canon does not prevent the bankruptcy-removal provision, 28 U.S.C. §1452, from superseding §22(a) of the 1933 Act to the extent of any inconsistency).

The language of the 2005 Act, rather than a canon, tells us how the new removal rule applies to corporate and securities actions. Section 1453(b) allows removal of any class action brought within federal jurisdiction by §1332(d), and §1453(d) adds:

(d) This section shall not apply to any class action that solely involves—

(1) a claim concerning a covered security as defined under section 16(f)(3) of the Securities Act of 1933 (15 U.S.C. [77p(f)(3)] and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));

(2) a claim that relates to the internal affairs or governance of a corporation or other form of business enterprise and arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

(3) a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

Section 1332(d)(9) has a functionally identical list. This tells us all we need to know. Claims listed in §1453(d) are not removable. Other securities class actions are removable if they meet the requirements of the 2005 Act (100 investors, $5 million in controversy, minimal diversity). To read §22(a) as Katz does would be to make most of §1453(d) pointless.

Canons such as "the specific prevails over the general" are just doubt resolvers. Section 1453(d) leaves no doubt

about how the 1933 Act, 1934 Act, and 2005 Act fit together. There is some incongruity in removing a securities action under the 2005 Act, which creates a species of diversity-of-citizenship jurisdiction, even though the 1933 Act creates a federal claim, but both the principal removal rule (§1453(b)), and the exceptions in §1453(d), show that the 2005 Act applies to claims that arise under federal law (provided that minimal diversity is present).

*Luther* failed to recognize that §22(a) of the 1933 Act is not a subset of the 2005 Act. More importantly, *Luther* did not appear to understand that §1453(d) tells us how the 2005 Act affects securities cases: the ninth circuit did not analyze this language or even acknowledge its existence. We therefore disagree with *Luther* and hold that securities class actions covered by the 2005 Act are removable, subject to the exceptions in §1332(d)(9) and §1453(d). Because it creates a conflict among the circuits, this opinion was circulated before release to all judges in active service. See Circuit Rule 40(e). None of the judges favored a hearing en banc.

Does any of the three exceptions apply? Subsection (d)(1) prevents removal of a claim concerning a "covered security" defined in 15 U.S.C. §77p(f)(3). That subsection says that the term "means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred". Section 77r(b) in turn defines covered securities as those that trade on a national securities exchange, are senior to a traded security, or were

issued by a registered investment company. The A-1 Units in Archstone were not "covered securities" by that definition.

Subsection (d)(2) deals with corporate internal affairs. Katz does not characterize his claim as one of that sort. But he does contend that it comes within subsection (d)(3) because it "relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security" (the A-1 Units are "securities" under the 1933 Act's definition). *Estate of Pew v. Cardarelli*, 527 F.3d 25, 31–33 (2d Cir. 2008), the only appellate decision about the effect of §1453(d)(3), concludes that it applies to suits asserting that the promises made in securities have not been honored but does not apply to suits asserting fraud or other misconduct in the sale of securities. Neither side in this appeal takes issue with *Cardarelli*'s holding. But they disagree about its application.

Katz describes his claim as a contention that Archstone and its successor have failed to keep the promises that the Declaration of Trust made to owners of A-1 Units. Defendants say that this can't be the theory, because Katz sold his A-1 Units and thus lost any rights they may have conferred. The only possible claim, as defendants see things, is that the documents sent to the investors offering the choice among cash, Series O Preferred Units, or dissent and appraisal under state law, were materially false or misleading and led investors to choose poorly. That would be a claim sounding in fraud—not under the 1933 Act, to be sure, since Katz was a seller rather than a buyer, but for the purpose of applying §1453(d)(3) it does not matter

whether the plaintiff's legal theory depends on the federal securities laws.

If as Katz insists his claim rests on the terms of the A-1 Units (and the Declaration of Trust), then §1453(d)(3) prevents removal under the 2005 Act. This *also* would mean that the suit might be removed under some other statute, for a suit to enforce a security's terms does not arise under the 1933 Act (or for that matter the 1934 Act, see *Santa Fe Industries*, 430 U.S. at 475–76) and so is not governed by §22(a). If as defendants insist the claim rests on a contention that deceit occurred in the merger and related transactions, then §1453(d)(3) does not prevent removal, and the suit must be decided on the merits in federal court. If the complaint rests on *both* theories, then it is removable, because §1453(d) covers only a class action that is "solely" one of the three enumerated kinds.

Because Katz's effort to invoke §1453(d)(3) is inconsistent with his reliance on the 1933 Act in general, and §22(a) in particular, it is tempting to suppose that defendants must be right. But the plaintiff as master of the complaint may present (or abjure) any claim he likes. The best approach is to have the district court hold a hearing at which the parties can elaborate on their positions, for the characterization of an ambiguous claim is closer to a question of fact than to one of law.

The judgment of the district court is vacated, and the case is remanded for a decision whether §1453(d)(3) prevents removal under the 2005 Act and, if it does, whether the case is removable under some other grant of

jurisdiction. If the case is not removable, it must be re-manded; otherwise it must be decided on the merits.